IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-00614-WDM-MJW

MICHAEL J. FITZPATRICK,

    Plaintiff,

v.

DURANT D. DAVIDSON,
ROBERT B. WAREHAM, and
ROBERT B. WAREHAM, ESQUIRE, P.C.,

    Defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Miller, J.

This matter is before me on Defendants' Combined Motion for Summary Judgment and Memorandum of Law in Support [Doc. No. 21]. Plaintiff opposes the motion. Originally, I referred this matter to the magistrate judge for recommendations. I withdraw that reference and will decide the matter myself. After a review of the pleadings and the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, the motion is granted.

### Background

The following facts are drawn from the parties' briefs[1] and are undisputed,

---

[1] In his Order dated March 16, 2007, Magistrate Judge Boyd N. Boland struck Plaintiff's second response to Defendants' Motion for Summary Judgment and ordered Plaintiff to submit a third response entitled "Third Response to Defendants' Motion for Summary Judgment." Plaintiff timely filed a document entitled "Response to Defendants' Combined Motion for Summary Judgment and Memorandum of Law in Support." [Docket No. 40; filed April 2, 2007]. Despite Plaintiff's failure to comply with the Court's simple Order, I have considered his improperly titled third response in this order.

except as noted:

1.  The Plaintiff filed his initial Complaint in this action on April 4, 2006 [Doc. No. 1]. In his Complaint, the Plaintiff asserts claims for professional negligence and breach of contract against Defendants, attorneys who represented him for approximately six months in 2004 in litigation against TCBY of Ireland, Inc. and other TCBY-related entities stemming from termination of a franchise agreement. Plaintiff alleges that Defendants committed malpractice and breached their contract to provide him with legal services by failing to bring "newly discovered evidence" to the attention of the Court.

2.  On February 18, 2004, Plaintiff and his business partner, Dr. Robert Schweizer, hired Defendants Durant D. Davidson, Esq. ("Davidson") and Robert B. Wareham, Esq., of the law firm of Robert B. Wareham, Esquire, P.C., to represent them and a company known as Advanced Food Concepts, Ltd., an Irish LLC ("AFC") in an ongoing lawsuit against TCBY of Ireland, Inc. and other TCBY-related entities ("TCBY"). *Defendants' Motion*, Ex. A-1.

3. The TCBY lawsuit was filed in the United States District Court for the Eastern District of Arkansas, Western Division, on February 27, 2001, through counsel Hugh L. Scott, Jr., of San Antonio, Texas. The Complaint asserted claims against TCBY of Ireland and related entities for breach of contract (a "Transnational Master Franchise Agreement," referred to by the acronym "TMFA"), breach of the covenant of good faith and fair dealing, and tortious interference with contractual relations. *Defendants' Motion*, Ex. A-3, pgs. 21-23.

4. On June 21, 2001, Plaintiff and his co-plaintiffs in the TCBY lawsuit filed an Amended Complaint which, *inter alia*, added a new Plaintiff, additional Defendants, and additional factual allegations, but continued to assert the same causes of action. The Amended Complaint was filed on Plaintiff's behalf by Zoila I. Silva, Esq. *Defendants' Motion*, Ex. A-4.

5. On July 2, 2001, Plaintiff filed a Motion for Substitution of Counsel, in which he sought to substitute Mr. Silva as counsel for Plaintiffs in the TCBY lawsuit. The Motion was granted by the Court on July 23, 2001. *Defendants' Motion*, Ex. A-5.

6. By Order dated June 5, 2003, United States District Court Judge Stephen M. Reasoner granted Motions for Summary Judgment filed by Defendants Creasman; Hillegas; Bean; TCBY Enterprises, Inc.; TCBY Systems, Inc.; TCBY International, Inc.; TCBY United Kingdom, Inc.; Americana Foods Limited Partnership; Capricorn Investors III L.P.; Mrs. Fields Famous Brands; Mrs. Fields Original Cookies, Inc.; TCBY Holding Company, Inc.; TCBY Systems LLL; and TCBY International, Inc, a division of TCBY Demanded Systems. *Defendants' Motion*, Ex. A-6, pgs. 9, 11, 13.

7. By the same June 5, 2003 Order, Judge Reasoner dismissed with prejudice the Plaintiffs' claim of tortious interference against Defendant TCBY of Ireland, but ordered that Plaintiffs' claim of breach of contract against Defendant TCBY of Ireland would proceed. *Defendants' Motion*, Ex. A-6, p. 14.[2]

---

[2]Plaintiff appears to dispute the fact that the claim for tortious interference, which was ultimately dismissed on summary judgment in Orders dated June 5 and July 24, 2003, included a claim based on assertions that TCBY and the Master Franchisees created "internal dissension" regarding the franchise agreement. *Plaintiff's Response,* p. 13. However, the Amended Complaint filed in the TCBY litigation appears to encompass the "internal dissension" facts discussed by Plaintiff. ¶ 2022 of the Amended Complaint asserted: "Defendants intentionally, tortiously, and unjustifiably interfered with and effectively

8. By Order dated July 24, 2003, Judge Reasoner granted Motions for Summary Judgment filed by Defendants Frank D. Hickingbotham; Herren Hickingbotham; Gene Whisenhunt and James Fink. *Defendants' Motion*, Ex. A-7, pg. 2.

9. By the same July 24, 2003 Order, Judge Reasoner stated that "[t]his case will go forward on the breach of contract claim against Defendant TCBY of Ireland and the claims of breach of contract and tortious interference against Defendant Keith Hayes." *Defendants' Motion*, Ex. A-7, p. 2. These were the only two remaining Defendants in the case.

10. By motion filed February 17, 2004, Mr. Silva, counsel at the time for the Plaintiffs in the TCBY lawsuit, requested that the Court relieve him as Counsel due to his problems working with Mr. Fitzpatrick, the Plaintiff. *Defendants' Motion*, Ex. A-8, p. 1.

11. By Order dated March 4, 2004, the Court granted Mr. Silva's motion to withdraw as Plaintiffs' counsel and accepted the Entry of Appearance of Defendant Davidson on behalf of the Plaintiffs in the TCBY case. *Defendants' Motion*, A-9, p. 2.

12. By the same March 4, 2004 Order, the Court stated that it had taken TCBY's Motion to Continue Trial Date under advisement, and scheduled an alternative trial date for the week beginning August 9, 2004. *Defendants' Motion*, Ex. A-9, p. 4.

---

destroyed Plaintiff's rights under the TMFA by intentionally procuring, soliciting and causing TCBY to cease all performance under the TMFA in an effort to create a default on the part of the Plaintiffs to assist them in their scheme of appropriating valuable rights from the Plaintiffs." *Defendants' Motion*, Ex. 4. Thus, to the extent that Plaintiff attempts to assert that there is a genuine issue of material fact regarding the scope of the Court's Order dismissing his tortious interference with contract claim, the assertion fails.

13. Also by this March 4, 2004 Order, the Court gave all parties up through and including March 10, 2004, in which to file Motions for Summary Judgment on the remaining claims, and then dismissed the Motion for Summary Judgment that the Plaintiff had filed *pro se* despite the fact that he was represented by Mr. Silva at the time of filing. *Defendants' Motion*, Ex. A-9, p. 3-4.

14. On March 9, 2004, Defendant Davidson filed the Plaintiffs' Motion for Partial Summary Judgment on the Issue of Liability and a Memorandum Brief in Support in the TCBY case. *Defendants' Motion*, Ex. A-10.

15. On March 10, 2004, TCBY of Ireland filed its Motion for Summary Judgment on Plaintiffs' Claims, and a Memorandum Brief in Support. *Defendants' Motion*, Ex. A-11.

16. By Order dated April 6, 2004, the Court granted TCBY's Motion to Continue Trial Date and reset the trial date for August 9, 2004. *Defendants' Motion*, Ex. A-12, pg. 2.

17. On April 9, 2004, Attorney Randall M. Harris faxed a letter to Defendant Davidson from Jan Bradburn, the former investment partner of Plaintiff in the TCBY venture ("Bradburn letter"). *Plaintiff's Response*, Ex. XII.[3]

18. In the Bradburn letter, Ms. Bradburn states, *inter alia*, that she believed that TCBY "saw an opportunity to default our agreement by simply playing us against each other. It is clear, [sic] that a decision was made to force termination at all of the

---

[3] By its page numbering, the Bradburn letter appears to consist of nine pages. Plaintiff has provided only pages 1, 7, 8 and 9 to the Court.

5

partner's [sic] expense. In doing so, they could easily rid themselves of an ugly partnership dispute, and recall the production rights to the EU and manage to keep the entire partnership investment." *Plaintiff's Response*, Ex. XII, p. 8. This information is what Plaintiff now refers to as the "newly discovered evidence."

19. On April 13, 2004, Defendants and Plaintiff attended a luncheon with Plaintiff's business partner, Dr. Schweizer. *Plaintiff's Response*, p. 14; *Defendant's Reply*, p. 4.

20. In or around April of 2004, Plaintiff's friend Wesley L. Rodstrom, Jr. sent the Defendants a check in the amount of $15,000, at the instruction of Plaintiff, in payment of anticipated legal fees and expenses. *Plaintiff's Response*, p. 14; *Defendant's Reply*, p. 4.

21. During a mediation that took place in the TCBY litigation on April 12, 2004, Defendant Davidson provided a copy of the Bradburn letter to the mediator, a judge, and requested that the mediator provide the letter to TCBY's counsel. *Plaintiff's Response*, p. 14; *Defendant's Reply*, p. 5.

22. By letter dated May 13, 2004, Defendant Davidson sent a letter to the presiding Judge in the TCBY case requesting that the Judge rule on the parties' pending cross-motions for summary judgment at his earliest opportunity. *Plaintiff's Response*, Ex. XXI.

23. Defendant Davidson sent a copy of his May 13, 2004 letter to Dr. Schweizer, the Plaintiff's business partner. *Defendants' Reply*, Ex. A-23.

24. In July of 2004, the Plaintiff hired another lawyer, Patrick Vellone of the law

firm of Allen & Vellone, P.C., in Denver, Colorado. *Defendants' Motion*, p. 8.

25. In July of 2004, Mr. Vellone filed Plaintiff's Motion for Leave to Amend Complaint and Plaintiff's Motion for Leave to File Supplemental Pleadings and Request to Stay Adjudication of the Parties' Cross Motions for Summary Judgment. *Defendants' Motion*, Ex. A-13, pg. 1; *Defendants' Motion*, Ex. A-15, pg. 1.

26. By Order dated August 4, 2004, the Court granted TCBY's Motion for Summary Judgment on all claims and denied Plaintiffs' Motion for Summary Judgment, thereby disposing of the Plaintiffs' case in its entirety. *Defendants' Motion*, Ex. A-13, pgs. 10-15. In its Order, the Court concluded, *inter alia,* that TCBY had been justified in terminating the TMFA, and thus no breach of contract claim could lie. *Defendants' Motion*, Ex. A-13, pgs. 11-15.

27. By the same August 4, 2004 Order, the Court denied the motions filed by Mr. Vellone. *Defendants' Motion*, Ex. A-13, pg. 1; Ex. A-15, pg. 1.

28. On September 4, 2004, Plaintiff filed a Motion for Relief from Order pursuant to Fed. R. Civ. P 60(b), alleging that "newly discovered evidence" from the Bradburn letter supported vacating the Court's August 4, 2004 Order granting TCBY's Motion for Summary Judgment and Motion in Limine, and also supported granting Plaintiffs' Motion for Leave to Amend Complaint. *Defendants' Motion*, Ex. A-15, p.1.

29. Plaintiffs' Motion for Relief from Order was strongly opposed by TCBY in its Memorandum in Opposition to Plaintiffs' Motion for Relief from Order filed on October 28, 2004. 23. *Defendants' Motion*, Ex. A-17. In its Memorandum, TCBY stated that the "new evidence" was neither new nor reliable. *Defendants' Motion*, Ex. A-17, p. 4.

30.  By Order dated December 20, 2004, the Court determined, as a matter of law, that the "newly discovered evidence" proffered by Plaintiffs "reasonably could have been discovered well before [the deadline]," and was also "duplicative of other purported evidence." *Defendants' Motion*, Ex. A-15, pg. 3.  Therefore, the Court denied Plaintiff's motion for relief.  *Defendants' Motion*, Ex. A-15, pg. 3.

31.  By Order dated February 7, 2005, the Court dismissed the TCBY litigation in its entirety by reason of settlement.  *Defendants' Motion*, Ex. A-16.

32.  In Defendant Davidson's first affidavit, he states that the reason he did not seek to bring Plaintiff's "new evidence" before the Court (other than in the context of settlement negotiations) was due to a "litigation tactics decision" and his concern for the truth and credibility of the evidence.  *Defendants' Motion*, Ex. A-21, p. 3.

33.  In the instant litigation, Plaintiff was allowed up to and including October 16, 2006, in which to designate his experts, and up to and including December 20, 2006 to designate his rebuttal experts.  *Scheduling Order,* Doc. No. 13; filed July 13, 2006; *Minute Order*, Doc. No. 20; filed November 9, 2006.

34.  On October 6, 2006, Plaintiff filed a Certificate in Accordance with C.R.S. § 13-20-602, stating that he had consulted a person with expertise in the areas of the alleged negligent conduct of the Defendants.  *Defendants' Motion*, Ex. A-20.

35.  Plaintiff has failed to designate any attorney as an expert witness for purposes of presenting his claims in this litigation, and has stated that "at trial he will present such legal theories as may be applicable citing commonly accepted legal texts and law review articles."  *Defendants' Motion*, Ex. A-18, p. 1.

36. The Plaintiff does not have a law degree, nor is he licensed to practice law in any jurisdiction in the United States. *Defendants' Motion*, p. 11.

## Standard of Review

Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56(c). Plaintiff is proceeding *pro se*. I must liberally construe the pleadings of a *pro se* plaintiff. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Nevertheless, I cannot act as an advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). To the extent that Plaintiff attempts to bring claims other than those I have identified, those claims are unintelligible and will not be recognized. *Id.* (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion, and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). Fed. R. Civ. P. 56(c) provides that summary judgment may be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating, by reference to portions of pleadings, depositions, answers to interrogatories and admission on file, together with affidavits, if any, the absence of genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  The party opposing the motion is then required to go beyond the pleadings and designate evidence of specific facts showing that there is a genuine issue for trial.  *Id.* at 324.  Only admissible evidence may be considered when ruling on a motion for summary judgment.  *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

## Discussion

A.  Breach of Contract

Plaintiff's First Claim for Relief is for breach of contract.  Plaintiff alleges, "Defendants represented that they would provide full representation in connection with the civil action against TCBY and specifically agreed to utilize the new evidence obtained by the Plaintiff fully in their prosecution of the claims against TCBY . . . ."  *Complaint*, p. 5.

Defendants seek summary judgment on this claim, asserting that Plaintiff's breach of contract claim is not cognizable.  They argue that Plaintiff's claim is not based on a specific term of the alleged contract, but is rather a restatement of the professional duties owed by lawyers.  *Defendants' Motion*, p. 15.  Therefore, Defendants allege that this claim is properly subsumed by Plaintiff's malpractice claim, and should be dismissed on this basis.  *Defendants' Motion*, p. 16.  For his part, Plaintiff claims that Defendants made and then breached an oral contract to use his

"new" evidence. *Plaintiff's Response*, p. 6;  p. 14.

The only written contract between the parties in evidence is the so-called "engagement agreement," wherein Defendants set forth the terms of their representation of Plaintiff. *Defendants' Motion*, Ex. A-1. This engagement agreement states the amount and timing of the compensation to be paid Defendants, and is signed by Defendant Davidson and Plaintiff as well as Dr. Schweizer, Plaintiff's business partner. *Defendants' Motion*, Ex. A-1, p. 2. Defendants premise their argument that the breach of contract claim is subsumed by the malpractice claim on Colorado law that "a claim based on a violation of duty imposed by the attorney-client relationship sounds in tort. While a claim for breach of the attorney-client contract is cognizable, it must be based on a specific term in the contract." *McLister v. Epstein & Lawrence, P.C.*, 934 P.2d 844, 847 (Colo. App. 1996).

It is indisputable that the engagement agreement contains no specific terms which relate to Defendants' duty to use evidence acquired by Plaintiff. However, Plaintiff alleges that Defendants verbally agreed to put the newly discovered evidence before the Court. *Plaintiff's Response*, p. 6.  Plaintiff claims that this agreement was completed when  directed that Defendants be paid $15,000 in April of 2004, following his lunchtime meeting with Defendants. *Plaintiff's Response*, pp. 6, 14; *Defendant's Reply*, p. 4. Plaintiff appears to be alleging that, in April of 2004, he and Defendants orally modified their engagement agreement to include the promise that Defendants would put forward the "new" evidence, and Plaintiff performed on this agreement when he tendered the $15,000 payment. For his part, Defendant Davidson states, "I never

agreed to perform any specific tasks in exchange for the payment of $15,000 in April 2004 . . . The $15,000 payment . . . was for one-half the payment contemplated as being paid in early April 2004 pursuant to the fee agreement . . . ." *Defendants' Reply*, Ex. A-24, p. 3.  In relying on their argument that Plaintiff's breach of contract claim is not cognizable, as it is not based on a specific term of the alleged contract, Defendants fail to address the issue of whether their contract with Plaintiff was orally modified to include a specific term.  *Defendants' Motion*, p. 15.   There is no doubt that the engagement agreement is a written contract for legal representation between Defendants and Plaintiff.  *Defendants' Motion*, Ex. A-1.  In Colorado, normally a written contract may be modified by later oral agreement.  *James H. Moore & Associates Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 372 (Colo. App. 1994); *Cordillera Corp. v. Heard*, 592 P.2d 12, 14 (Colo. App. 1978).  The contract between the parties does not fall under the Colorado Statute of Frauds, which would require any subsequent modifications to be in writing.  C.R.S. § 38-10-108, *et seq.*  Further, there is no clause contained within the engagement agreement requiring that any subsequent modifications be in writing.  If the parties orally modified their contract to add the specific term that Defendants would submit Plaintiff's "newly discovered evidence" to the Court, this could defeat Defendants' argument that Plaintiff's claim is not based on a specific term in the contract.

As evidence of this alleged oral modification of the contract, Plaintiff has submitted three affidavits; from himself, Dr. Schweizer and Mr. Rodstrom.  *Plaintiff's Response*, Ex. X; Ex. XIII; Ex. XV.  However, as Defendants point out in their Reply,

12

Plaintiff's affidavits do not make any reference to any of the statements asserted therein as being attested under oath, as required by Fed. R. Civ. P. 56(e).  *Defendants' Reply*, p. 4, footnote 2.  Unsworn affidavits do not meet the requirements of Fed. R. Civ. P 56(e) and need not be considered by the Court.  *Hayes v. Marriott*, 70 F.3d 1144, 1148 (10th Cir. 1995); *Nissho-Iwai Am. Corp. V. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1998) (holding that a notarized affidavit which is "neither sworn nor its contents stated to be true and correct nor stated under penalty of perjury . . . is incompetent to raise a fact issue precluding summary judgment"); *Gallegos v. Swift & Co.*, 237 F.R.D. 633, 641 (D.Colo. 2006) (finding that courts "need not consider evidence that does not conform to these requirements" of Fed.R.Civ.P. 56(e)).   In addition, the affidavit of Mr. Rodstrom contains only inadmissible hearsay evidence of the alleged agreement, and the affidavit of Dr. Schweizer does not demonstrate the existence of an agreement.

Other than these inadmissible affidavits, Plaintiff has not proffered any evidence to show that the engagement agreement was modified by the parties to include a requirement that Defendants would use the evidence Plaintiff refers to as "newly discovered," and that the payment of $15,000 to Defendants in or around April of 2004 was made as consideration for this new agreement.[4]  *Plaintiff's Response*, p. 14; *Defendant's Reply*, p. 4.  Plaintiff has failed to meet his Rule 56(e) burden to raise a

---

[4]I note also that the alleged agreement, to the extent that it consisted of a promise by an attorney to present to the court evidence he believed to be perjured or purchased, would be unenforceable as against public policy.  *Equitex, Inc. v. Ungar*, 60 P.3d 746, 750 (Colo. App. 2002) ("A court will not enforce a contract that violates public policy . . .").  Plaintiff has offered no evidence to dispute that Defendant Davidson feared that the alleged "new evidence" was not credible and was unreliable.

genuine issue of material fact as to his claim for breach of contract. Accordingly, summary judgment should enter in favor of Defendants on this claim.

B.   Professional Negligence

Plaintiff's Second Claim for Relief alleges that "Defendants failed to provide the standard level of legal representation and that their overall negligence and associated failure to properly pursue the new evidence in any way whatsoever resulted in the Plaintiff's inability to have his case properly heard by the trial Court." *Complaint*, p. 5. I interpret this as an allegation of professional negligence. Defendants seek summary judgment on this claim, asserting that in a professional negligence claim, the appropriate standard of care must be established by expert testimony and Plaintiff has, to date, failed to endorse a standard of care expert. *Defendants' Motion*, p. 11, 14; Ex. 18-A. For his part, Plaintiff does not dispute that he has not endorsed a standard of care expert, but states that he has met his burden by "obtaining the 'Certificate' required under Colorado law" and further, disagrees that he is "required by law to endorse an 'expert' witness." *Plaintiff's Response*, p. 3.

In Colorado, a plaintiff in an action for "damages or indemnity based upon the alleged professional negligence of a licensed professional" must file a "certificate of review" with the Court within sixty days of commencing the action. C.R.S. § 13-20-602(1). This certificate of review must state that the plaintiff has consulted with a person who has expertise in the area of the alleged negligence, the person consulted has reviewed the known facts and records deemed relevant by the consultant, the claim asserted by the plaintiff does not lack substantial justification, and the consultant is

competent to express an opinion as to the negligent conduct alleged. C.R.S. § 13-20-602(3). Pursuant to the statute, failure by the plaintiff to file this required certificate of review "shall result" in the dismissal of the claim of negligence. C.R.S. § 13-20-602(4). It is well established that in diversity cases brought in federal court where Colorado substantive law governs, the provisions of Colorado's certificate of review statute are substantive and are applicable. *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1540 (10th Cir. 1996). On October 6, 2006, Plaintiff filed his "Certificate in Accordance with C.R.S. 13-20-602, et seq." Technically, this may meet the statutory requirement, but it does not identify who the expert was to be.[5] The statute, however, contemplates that this court may require the plaintiff to identify the expert. C.R.S. § 13-20-602(3)(b).

Plaintiff must also comply with the requirements of Fed. R. Civ. P. 26(a)(2) and must present admissible evidence sufficient to establish a prima facie case. A Fed. R. Civ. P. 16(a) scheduling conference was held on July 13, 2006, at which time Magistrate Judge Boland directed Plaintiff to designate all expert witnesses, pursuant to Fed. R. Civ. P. 26(a)(2), on or before October 2, 2006, and all rebuttal expert witnesses on or before December 16, 2006. *Scheduling Order,* Docket No. 13; filed July 13, 2006. I construe this order to also require disclosure pursuant to C.R.S. § 13-20-602(3)(b). Magistrate Judge Boland granted a motion for an extension of time, amending the Scheduling Order on November 9, 2006, to reflect that Plaintiff would

---

[5]Plaintiff filed his Complaint on April 4, 2006. His Certificate of Compliance was filed on October 5, 2006. Plaintiff did not file his Certificate within the sixty day time period required by law, but as the Defendants have raised no objection on these grounds the timeliness issue will not be considered by the Court.

have until October 16, 2006 to designate all experts, and until December 29, 2006 to designate rebuttal experts. *Minute Order,* Docket No. 20; filed November 9, 2006. In the Scheduling Order, Plaintiff stated that he anticipated expert testimony in the fields of "commercial litigation" and "damage calculation." Docket No. 13; filed July 13, 2006.

Plaintiff has not yet designated any experts as required by C.R.S. § 13-20-602(3)(b) and Fed. R. Civ. P. 26(a)(2), and disputes that he is required to do so. However, it is well established that to succeed on a legal malpractice claim in Colorado, a plaintiff must show that: (1) the attorney owed a duty of care to the plaintiff, (2) the attorney breached that duty, and (3) the attorney proximately caused damage to the plaintiff. *See e.g. Hopp & Flesch, LLC v. Backstreet*, 123 P.3d 1176, 1183 (Colo. 2005). Further, as a professional is judged according to the tenets of the professional field to which he or she belongs, the Courts require that the appropriate standard of care in that field must be established. *Redden v. SCI Colorado Funeral Services, Inc.*, 38 P.3d 75, 81 (Colo. 2001). Therefore, "[e]xpert testimony is generally necessary to assist the trier of fact in determining the applicable standards [of care] because in most cases such standards are not within the purview of ordinary persons." *Redden*, 38 P.3d at 81; *Giron v. Koktavy*, 124 P.3d 821, 825 (Colo. App. 2005) ("Except in clear and palpable cases, expert testimony is necessary to establish the standards of acceptable professional conduct"). The Colorado Supreme Court has emphasized that expert testimony is especially crucial in cases of professional negligence because, "without [it], the trier of fact would be left with no standard at all against which to evaluate the defendant's conduct." *United Blood Services v. Quintana*, 827 P.2d 509, 520 (Colo.

1992).

Plaintiff filed a document entitled "Expert Disclosure," in which he describes his difficulties obtaining an expert witness and purports to designate himself as an expert. *Defendants' Motion*, Ex. A-18. Plaintiff does not seem to dispute that he has not designated any expert witnesses or expert rebuttal witnesses, as required by Fed. R. Civ. P. 26(a)(2). However, Plaintiff appears to disagree that he is required under current case law to endorse an expert witness, and feels that his own testimony will adequately serve as expert testimony. *Plaintiff's Response*, p. 3.

There are occasional cases which do not require expert testimony to establish professional negligence. Certain limited circumstances, such as the failure to file a claim within the applicable statute of limitations, have been found to render alleged professional negligence so obvious as to made expert testimony unnecessary. *Giron*, 124 P.3d at 825. Plaintiff would have the Court believe that the instant case presents such a clear-cut situation, where the professional negligence of the Defendants is so obvious as to make expert testimony unnecessary. Plaintiff claims that "the actual facts in evidence support a 'strategy' with which the jury will no doubt be familiar . . . more akin to 'bait and switch' than one which is based upon applicable legal ethics." *Plaintiff's Response*, p. 3. However, the Court disagrees with Plaintiff's characterization of the facts in evidence and the legal strategy of Defendants.

The TCBY case in which Defendants represented Plaintiff for approximately six months was complex civil litigation. It is undisputed that Defendants made a strategic litigation decision not to bring forward the "newly discovered evidence" of the Plaintiff

due to their "concern over the credibility and veracity of [the evidence] and due to [their] litigation tactics decision to keep the case as simple and straightforward as possible in the form of pursing [sic] the single, and in [their] opinion, strongest claim. . . ." *Defendants' Motion*, Ex. A-21, p. 3. This Court cannot rule on whether this inaction by Defendants constituted legal malpractice. However, this Court does find that the litigation decisions of Defendants in the TCBY case were based on complex legal issues that require expert testimony to establish the standard of care. This is not a simple case involving failure to file a claim within the required statute of limitations. Therefore, the requirements of Fed. R. Civ. P. 26(a)(2) and C.R.S. § 13-20-602(3)(b) must be met. Plaintiff was obligated to timely designate experts and rebuttal experts who are able to testify regarding the standard of care in the legal profession. Regardless of Plaintiff's belief that he can adequately explain the matter to a jury, Plaintiff is neither an attorney nor a legal expert. Plaintiff lacks the requisite education and qualifications to testify as to the applicable standard of care. *See, e.g., Grace United Methodist Church v. City Of Cheyenne,* 451 F.3d 643, 668 (10th Cir. 2006) (bishop with no legal training or expertise was not qualified to give legal opinions); *United Blood Services*, 827 P.2d at 520. Plaintiff's failure to designate an expert prevents him from prevailing on his claims as a matter of law, because he has failed to raise a genuine issue of material fact as to the standard of care required in a professional negligence action.

Accordingly, it is ordered:

1.  The reference to Magistrate Judge Michael J. Watanabe is withdrawn.

2. Defendants' Combined Motion for Summary Judgment and Memorandum of Law in Support [Doc. No. 21] is granted.

3. Plaintiff's complaint is dismissed with prejudice.

4. Defendants may have their costs.

DATED at Denver, Colorado, on September 26, 2007.

BY THE COURT:


s/ Walker D. Miller
United States District Judge